UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————

Nº 10-cv-5245(JFB) (ARL)

———————————

EDWARD S. LEWIS

Plaintiff,

VERSUS

THOMAS CARRANO, ET AL.,

Defendants.

———————————

**MEMORANDUM AND ORDER**
February 23, 2012

———————————

JOSEPH F. BIANCO, District Judge:

Plaintiff Edward S. Lewis (hereinafter "plaintiff" or "Lewis") commenced this action against defendants Thomas Carrano ("Carrano"), John Turner, Town of Brookhaven Department of Planning, Environment and Land Management, Department of Building & Housing, and Town of Brookhaven (collectively, the "defendants"), alleging a violation of his constitutional right to equal protection under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. Specifically, plaintiff alleges that his constitutional rights were violated when the defendants intentionally delayed any decision on his wetlands permit application, in connection with plaintiff's anticipated construction on his property in the Hamlet of Fire Island Pines.

Defendants have moved to dismiss plaintiff's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), on the following grounds: (1) plaintiff has not been injured; (2) plaintiff's claim is unripe; (3) plaintiff has failed to allege an equal protection claim; (4) defendant Carrano is entitled to qualified immunity.

For the reasons set forth herein, the Court grants defendants' motion to dismiss the complaint in its entirety on the ground that plaintiff's claim is unripe.[1] In particular, it is well settled, under both Supreme Court and Second Circuit jurisprudence, that a land use challenge in federal court is unripe unless the plaintiff has obtained a final decision with respect to the land use from state authorities. The Second Circuit has further emphasized that the "final decision" requirement includes utilization of an Article 78 proceeding,

---

[1] Because the Court concludes that the complaint must be dismissed as unripe, the Court does not address defendants' other arguments.

which is available in state court, to challenge the denial of a land use permit or a delay in processing a permit. Here, it is undisputed that plaintiff did not bring an Article 78 proceeding to attempt to rectify the delay in the processing of his permit. The Article 78 proceeding brought by plaintiffs' neighbors challenging the variances for the property issued by the Board of Zoning Appeals did not address the separate wetlands permit application, or any alleged delay in the processing of that application. Thus, his constitutional claim regarding the alleged delay in issuing the wetlands permit is unripe for judicial review. To hold otherwise would be to provide immediate access to federal courts for land owners to challenge any delay in a zoning/permit decision by a municipality without first utilizing the process available to them in state court to obtain a final decision. Such a result would be fundamentally inconsistent with the legal framework that the Supreme Court and Second Circuit have articulated for land use challenges, including equal protection claims.

Moreover, the claim is now moot because the Appellate Division, Second Department, vacated the separate Board of Zoning variances that also were required to proceed with the proposed construction. Once the Second Department vacated the Board of Zoning variances, plaintiff amended the wetlands permit application. The amended application was granted and never challenged. Thus, given the Second Department decision and the amended wetlands permit application, the constitutional claim regarding the initial wetlands permit application is now moot.

I. BACKGROUND

A. The Complaint

The following facts are taken from the amended complaint and are not findings of fact by the Court. They are assumed to be true for the purpose of deciding this motion.

Plaintiff is the owner of a parcel of real property in the Hamlet of Fire Island Pines, located within the Town of Brookhaven (the "Town"). (Amended Complaint ("Am. Compl.") ¶ 1.) The parcel is residentially zoned and currently improved with a residential home, swimming pool, and other structures. (*Id.* at ¶¶ 16-17.) Sometime in late 2007, plaintiff sought relief from the Town of Brookhaven and its Zoning Board to construct three proposed structures, to legalize eight existing structures, and to construct an addition to his bedroom that measured approximately 96 square feet. (*Id.* ¶ 18.) Hearings on the proposed additions and legalizations were held on April 9, 2008 and January 28, 2009. (*Id.* ¶ 21.) The matter was held open until February 25, 2009, when more testimony was taken, including testimony from the Fire Island Pines Property Owners' Association, which had no objection to the application. (*Id.*) At the February 25, 2009 meeting, the application was put on the decision calendar. The application was granted on April 1, 2009, and the final findings and conditions were signed by the Chairman of the Board of Zoning Appeals ("BZA") on June 1, 2009. (*Id.*) The parties do not dispute that the application's grant was subject to the issuance of a Wetlands and Waterways permit (the "wetlands permit"). (Pl's Br. at 3, Defs.' Br. at 5.)

On or about May 15, 2009, plaintiff's neighbors, Marguerite Switzgable and Thomas Brown (the "neighbors") filed an Article 78 petition in the Supreme Court,

Suffolk County, to set aside the decision of the BZA. (Am. Compl. ¶ 22.) As a result of this action, the Town was stayed from issuing any permits. (*Id.*) In the Article 78 proceeding, the BZA was defended by the Town and plaintiff. (*Id.* ¶ 23.) On July 1, 2009, defendant Carrano, the Assistant Waterways Management Supervisor for the Division of Environmental Protection, wrote a letter to plaintiff's neighbors indicating that he was opposed to the applications for variances and wished to preserve the Fire Island National Seashore. (*Id.* ¶¶ 3, 23.)

On October 21, 2009, the Supreme Court denied the neighbors' Article 78 petition with respect to all but one of the variances, specifically the variance regarding a privacy fence. (*Id.* ¶ 22; Defs.' Br. at 6.)[2]

When the stay was lifted regarding plaintiff's application, plaintiff's environmental expert, Thomas Cramer ("Cramer"), asked defendant Carrano to continue to process the wetlands permit.[3] (Am. Compl. ¶¶ 25-26.) Plaintiff filed an appeal to the Appellate Division, Second Department with regard to the fence, and the neighbors filed a cross-appeal of the Supreme Court's entire decision. (*Id.* ¶ 27.) The neighbors moved for a stay before the Appellate Division, requesting that the Town be enjoined from issuing permits. (*Id.*) The Appellate Division denied the motion on July 2, 2010. (*Id.*)

Meanwhile, Cramer and defendant Carrano had been corresponding regarding the wetlands permit.[4] (*Id.* at ¶ 30.) In January 2010, Cramer's office requested a status update and was told the application was being analyzed. (*Id.*) Later that month, Cramer's staff was told the matter was on defendant Carrano's desk, but he had not yet reviewed it. (*Id.*) In May 2010, Cramer sent a letter to defendant Carrano inquiring whether there were any revisions, and on May 6, 2010, construction plans were requested. (*Id.*) On May 17, 2010, Cramer answered Carrano's letter. (*Id.*)

On May 24, 2010, proof of compliance with all legal requirements from the Town was sent to Carrano. (*Id.*) On June 10, 2010, Carrano requested revised surveys, and Cramer prepared and delivered these surveys. (*Id.*) On July 12, 2010, Carrano sent Cramer a letter indicating that certain conditions and covenants were required for the permits, including the planting of Goldenrod on the property. (*Id.*) Several of the covenants would decrease the property value. (*Id.*) Cramer had never encountered these types of requirements before, and notified defendant Carrano that Carrano's requests were repetitive and irrelevant. (*Id.*) Carrano also wanted Cramer to respond to the comment letters received by individuals and agencies as a result of required mailings to neighbors. (*Id.* ¶ 30.) At some point during the course of this correspondence regarding the permits, one of Cramer's employees received a telephone call from defendant Carrano; during the call defendant Carrano indicated that he would never issue any permits on plaintiff's property. (*Id.* ¶ 29.)

Plaintiff alleges that the issuance of a wetlands permit is an administrative function for which one simply has to supply

---

[2] The Court notes that the date of the outcome of the Article 78 proceeding is not contained in the Amended Complaint, though it is inferred. Plaintiff does not dispute defendant's presentation of this fact in plaintiff's opposition to defendants' motion to dismiss.

[3] Cramer made the original request for a wetlands application as early as December 2007. (Am. Compl. ¶ 28.)

[4] During this correspondence, there were personal meetings between Cramer and Carrano at Lewis's property. (*Id.* at ¶ 30.)

information.[5] (*Id.* ¶ 32.) Plaintiff further alleges that defendant Carrano treated him differently than similarly situated applicants in an effort to help the neighbors. (*Id.* ¶¶ 32-33, 40.)

On November 9, 2010, the Appellate Division issued a decision and order vacating the BZA variances. Specifically, the Appellate Division granted "those branches of the amended petition which were to annul those portions of the determination as granted Edward S. Lewis the seven additional area variances." *Switzgable v. Board of Zoning Appeals of the Town of Brookhaven*, 911 N.Y.S.2d 391, 392, 78 A.D.3d 842 (N.Y. App. Div. 2010). The Appellate Division upheld the Supreme Court's decision regarding the fence. *Id.* at 393. Defendants assert that due to this decision, "the wetlands permit applications, except for a few minor items unrelated to the BZA variances, were rendered moot." (Defs.' Br. at 8.)

Following the Appellate Division decision, the plaintiff amended the wetlands permit application. (Defs.' Jan. 4, 2012 Letter, at 2; Defs.' Ex. S, Letter From Cramer to Carrano dated February 15, 2011.) According to plaintiff, the permit on the amended application was issued on February 25, 2011. (Pl.'s December 16, 2011 Letter, at 3; Defs.' Ex. T, Letter From J. Kassner to Lewis with Enclosures dated February 25, 2011.) No challenge has been made to that decision.

B. Procedural Background

Plaintiff filed his complaint in the instant matter on November 15, 2010, six days after the Appellate Division's decision in *Switzgable*. Defendants filed a motion to dismiss the complaint on April 11, 2011. Plaintiff filed an amended complaint on May 26, 2011. Defendants filed a second motion to dismiss on July 15, 2011. Plaintiff filed his opposition to the motion to dismiss on August 16, 2011. Defendants filed their reply on August 25, 2011. Oral argument was held on November 18, 2011. Plaintiff submitted a supplemental letter on December 16, 2011. Defendants submitted a supplemental letter on January 4, 2012. The Court has fully considered the submissions and arguments of the parties.

II. LEGAL STANDARD

Defendants have moved to dismiss the complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure and under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As the Court finds the complaint must be dismissed pursuant to Rule 12(b)(1), this standard for dismissal is set forth below.

---

[5] Though not stated in plaintiff's amended complaint, defendant has represented that the issuance of "Class B Wetlands Permits" is governed by Brookhaven Town Code § 81-7, which requires the Commissioner of Planning, Environment and Development or is designee to:

> Consider the functions of the wetlands and surface water functions and their role in the hydrologic and ecological system and evaluate the effect of the proposed activity with respect to the public health and welfare; navigation, public access and impact to adjacent properties; fishing and shellfishing; flood, hurricane and storm dangers; water quality; loss of natural aesthetic values; and protection or enhancement of the several function[s] of wetland and the benefits derived therefrom which are set forth in § 81-1 of this chapter. The Commissioner or the designee of the Commissioner shall also consider any land use regulations promulgated by the Commissioner of the New York State Department of Environmental Conservation.

(Defs.' Br. at 6-7, Brookhaven Town Code § 81-12.) Plaintiff does not dispute the existence of this section of the Brookhaven Town Code.

4

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In reviewing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [the Court is] not to draw inferences from the complaint favorable to plaintiffs." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 110 (2d Cir. 2004). Moreover, the court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but [the Court] may not rely on conclusory or hearsay statements contained in the affidavits." *Id.* "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys. Inc.*, 426 F.3d 635, 638 (2d Cir. 2005).

### III. DISCUSSION

Defendants contend that plaintiff's Section 1983 claim should be dismissed because it is not ripe for review, and, thus, the Court lacks subject matter jurisdiction. As set forth below, the Court agrees.

For claims to be justiciable under Article III, "courts have long recognized that the controversy, as an initial matter, must be ripe." *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 348 (S.D.N.Y. 2000) (citing *Marchi v. Bd. of Coop. Educ. Servs.*, 173 F.3d 469, 478 (2d Cir. 1999)), *aff'd*, 252 F.3d 645 (2d Cir. 2001)); *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir. 1998). Moreover, the Supreme Court has explained that "[r]ipeness is a justiciability doctrine designed 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.'" *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 807-08 (2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1967)).

The Supreme Court has established a two-pronged test to determine whether a claim is ripe for takings-type claims. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985). The first prong requires that the government entity charged with implementing the regulations in question to have reached a "final decision." *Id.* at 186; *see Honess 52 Corp. v. Town of Fishkill*, 1 F. Supp. 2d 294, 301 (S.D.N.Y. 1998) (finding that the court "cannot determine whether a plaintiff has been deprived of property, arbitrarily or otherwise, until it has a final decision before it"). The second prong requires plaintiffs to have sought compensation through "reasonable, certain and adequate" state provisions for obtaining compensation. *Williamson County*, 473 U.S. at 194. Although the ripeness test in *Williamson County* involved only a takings claim, the ripeness requirement of *Williamson County* has also been extended by the Second Circuit to equal protection and due process claims asserted in the context of various land use challenges.[6] *See Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88-89 (2d Cir. 2002) ("The ripeness requirement of *Williamson*, although announced in a takings context, has been extended to equal protection and due process claims asserted in the context of

---

[6] Plaintiff concedes that *Williamson County* applies to his claim. *See* Pl.'s December 16, 2011 Letter, at 1, ECF No. 25 ("This Circuit has extended the [*Williamson County*] prong on ripeness to land use cases involving claims of due process; procedural and substantive and equal protection.").

land use challenges."); *Southview Assocs. Ltd. v. Bongartz*, 980 F.2d 84, 96-97 (2d Cir. 1992) (applying ripeness test to substantive due process claims); *County View Estates @ Ridge LLC v. Town of Brookhaven*, 452 F. Supp. 2d 142, 148-50 (E.D.N.Y. 2006) (applying ripeness test to equal protection and due process claims); *see also Goldfine v. Kelly*, 80 F. Supp. 2d 153, 158 (S.D.N.Y. 2000); *Reifler v. City of Poughkeepsie*, No. 96-9604, 1997 WL 383438 at *2, (2d Cir. July 9, 1997); *Kittay*, 112 F. Supp. 2d at 349 n.5.

In *Murphy v. New Milford Zoning Comm'n*, the Second Circuit explained the considerations underlying prong-one ripeness – namely, the "final decision" requirement:

> Four considerations, all of which motivate our decision today, undergird prong-one ripeness. First . . . the *Williamson County* Court reasoned that requiring a claimant to obtain a final decision from a local land use authority aids in the development of a full record . . . . Second, and relatedly, only if a property owner has exhausted the variance process will a court know precisely how a regulation will be applied to a particular parcel . . . . Third, a variance might provide the relief the property owner seeks without requiring judicial entanglement in constitutional disputes. Thus, requiring a meaningful variance application as a prerequisite to federal litigation enforces the long-standing principle that disputes should be decided on non-constitutional grounds whenever possible . . . . Finally, since *Williamson County*, courts have recognized that federalism principles also buttress the finality requirement. Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.

402 F.3d 342, 348-49 (2d Cir. 2005) (citations omitted). As the Second Circuit has noted, "[t]he *Williamson County* ripeness test is a fact-sensitive inquiry that may, when circumstances warrant, be applicable to various types of land use challenges." *Id.* at 350.[7]

Defendants contend that plaintiff's claim is not ripe for review because the Town did not issue a final decision with regard to plaintiff's wetlands permit application. Defendants argue that plaintiff never instituted a proceeding, pursuant to Article 78, to compel the issuance of the wetlands permit, nor has he challenged the wetlands permit that was eventually granted after the Appellate Division's decision. Plaintiff asserts that, because the BZA granted plaintiff's applications for variances, this was a final decision satisfying the first prong of *Williamson County*. (Pl.'s Letter, December 16, 2011, ECF No. 25.)

The Court agrees with defendants that plaintiff has not satisfied *Williamson County*'s first prong; plaintiff never received a final decision with respect to the wetlands permit.

First, in his supplemental letter following oral argument, plaintiff contends that the BZA findings (which granted the

---

[7] The second prong of *Williamson County* is only implicated in cases involving takings challenges. *See Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 349 (2d Cir. 2005). Thus, the Court only examines the first prong of *Williamson County* to evaluate ripeness.

6

variances sought by plaintiff) and the neighbors' Article 78 proceeding challenging that decision constituted a final decision that satisfies "prong one" of the ripeness test in *Williamson*. The Court disagrees. In this lawsuit, the plaintiff is not challenging the BZA's decision with respect to the *variances*; rather, plaintiff challenges the defendants' delay in issuing him the separate *wetlands permit*. Since plaintiff's claim arises from the delay in issuing the wetlands permit, there must be a final decision with respect to the wetlands permit. *See Country View Estates @ Ridge LLC*, 452 F. Supp. 2d at 149 ("A final decision is a definitive position *on the issue* that inflicts an actual, concrete injury." (internal quotation marks and citations omitted) (emphasis added)). Thus, any final decision on the variances in connection with the neighbors' Article 78 proceeding does not satisfy prong one with respect to the alleged lack of a decision, or delay, in the issuance of the wetlands permit, which is the subject of this lawsuit.

Second, in a related argument, plaintiff contends that the issuance of a wetlands permit was merely ministerial after the variances were approved and, therefore, he should not have had to bring a mandamus action, pursuant to the Article 78 proceeding. In other words, according to plaintiff, the wetlands permit should have been issued with the variances granted by the BZA and, when the neighbors unsuccessfully sought a preliminary injunction seeking a stay of the issuance of the permits, no further action was necessary by plaintiff. The Court disagrees. The denial of the neighbors' request for a stay is not the equivalent of compelling a municipality to act within a certain timeframe.

Any injury from the delay in the processing of the plaintiff's wetlands permit is precisely the type of injury that requires a final decision. *See Osborne v. Fernandez*, No. 06-CV-4127 (CS)(LMS), 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009), *aff'd*, 414 F. App'x 350 (2d Cir. 2011) ("The types of injuries claimed by Plaintiffs – delay and bad faith in the processing of their application and loss of desired use of their property – are precisely the types of claimed injuries that require a final decision to become potentially cognizable."). Moreover, an Article 78 proceeding could have satisfied this requirement in order to bring a cognizable Section 1983 claim. As noted in *Osborne*,

> [t]hough the Court is not unsympathetic to Plaintiffs' frustration, an Article 78 proceeding in state court, as opposed to a premature Section 1983 action, would have been the appropriate avenue through which to address these concerns.

2009 WL 884697 at *5 n.12; *see also R-Goshen LLC v. Village of Goshen*, 289 F. Supp. 2d 441, 449 (S.D.N.Y. 2003), *aff'd sub. nom. R-Goshen LLC v. Andrews*, 115 F. App'x 465 (2d Cir. 2004) ("If Plaintiff thought that the Planning Board was refusing either to approve or deny his application, it could and should have brought an Article 78 proceeding in state court to force the Planning Board to make a decision."). Thus, if plaintiff was unhappy with the amount of time the Town was taking to process the wetlands permit (either before or after the Appellate Division's decision regarding the variances), he had the ability to bring an Article 78 proceeding to challenge that delay.

It is undisputed that plaintiff never instituted an Article 78 proceeding or undertook any other action to precipitate a final decision with respect to the wetlands

permit. Therefore, with respect to the delay in processing the plaintiff's wetlands permit application, the Court finds that plaintiff had not received a final decision regarding the permits, barring this suit. In other words, as there was no final decision with regard to the wetlands permit, plaintiff's claim is unripe and must be dismissed.

In reaching this conclusion, although not raised by plaintiff, the Court is aware of the Second Circuit's decision in *Adrian v. Town of Yorktown*, 210 F. App'x 131 (2d Cir. 2006). In this summary order of no precedential value, the Second Circuit suggested, in *dictum*, that equal protection claims may not be subject to the final decision requirement where "constitutional injury had already been inflicted." *Id.* at 133 n.2. Like the court in *Osborne*, this Court concludes that, even if plaintiff argued that he already suffered a constitutional injury due to delay, "delay alone is insufficient, and the injuries alleged by [plaintiff] will not be concretely defined until there exists a final decision on [the wetlands permit]." *Osborne*, 2009 WL 884697 at *5 n.13. The Court also agrees with the *Osborne* court's conclusion that "*Adrian* seems to conflict with *Dougherty* and other Second Circuit cases applying the final decision requirement to equal protection and due process claims . . . . Indeed, *Dougherty*, on which *Adrian* relied, made plain that the final decision prong of the *Williamson* ripeness test applied to claims such as those asserted here." *Id.* (citations omitted). In *Dougherty*, the plaintiff suffered five-and-one-half years of delay in the processing of his permit application, and the Second Circuit still found plaintiff's equal protection and other claims were unripe. *See Dougherty*, 282 F.3d at 89 ("We are not unsympathetic to Dougherty's complaints about the 5 ½ year delay occasioned in large part by the Board's unjustified requirement that he file an EIS. And we are aware of Dougherty's charge that the Board treated him unfairly in allegedly changing its policy . . . We are also aware of Dougherty's claim that he suffered considerable damage, including the lost use of his property over a lengthy period . . . Nevertheless, under *Williamson* the claims in Dougherty's original complaint were not ripe as discussed above."). Given *Dougherty*, the Second Circuit's affirmance of *Osborne*, and the analysis underlying *Williamson County*'s ripeness requirement, plaintiff's complaint must be dismissed as unripe.

Finally, the Court notes that, not only is plaintiff's claim unripe under *Williamson County*, it is now moot. The Court is aware that due to the Appellate Division's vacatur of the variances underlying the original wetlands permit application, plaintiff cannot return to the town's regulatory agencies or state court to effectuate a final decision on the original wetlands permit application; the issue is now moot. In fact, it is clear from the submissions that, following the Second Department's decision vacating the BZA variances, plaintiff amended his wetlands permit. That amended application was granted, and has never been challenged. Thus, under these particular circumstances, the claim is both unripe and now moot. These circumstances are similar to the situation in *The Tara Circle, Inc. v. Bifano*, No. 95-CV-6522 (DLC), 1997 WL 399683 (S.D.N.Y. July 15, 1997). In that case, the Court ruled that the equal protection claim for selective enforcement of the village's zoning laws was not ripe because the village had yet to grant a special permit to another party under the zoning law. *Id*. at *14. However, at the same time, the Court concluded that the claim was now moot due to a foreclosure action on plaintiff's property. *Id*. ("For these reasons, I find plaintiff's allegations of selective enforcement are not ripe – and never will ripen as they are now moot – and thus

granted defendants summary judgment as to plaintiffs claim under Section 1983 to the extent that claim is based on a violation of the Equal Protection Clause."). Here, as in *Bifano*, the claim is unripe and now moot.

### IV. CONCLUSION

For the foregoing reasons, the Court grants defendants' motion to dismiss pursuant to Rule 12(b)(1). Plaintiff's complaint is dismissed in its entirety. The Clerk of the Court shall enter judgment accordingly and close this case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: February 23, 2012
Central Islip, NY

\* \* \*

Plaintiff is represented by William D. Wexler, 816 Deer Park Avenue, North Babylon, NY 11703. The attorneys for the defendants are Maureen T. Liccione and Stanley A. Camhi, Jaspan, Schlesigner & Hoffman, LLP, 300 Garden City Plaza, Garden City, NY 11530.